Heidi McIntosh (Colorado Bar No. 48230) *(Admitted Pro Hac Vice)*
Stuart C. Gillespie (Colorado Bar No. 42861) *(Admitted Pro Hac Vice)*
Thomas Delehanty (Colorado Bar No. 51887) *(Admitted Pro Hac Vice)*
Earthjustice, Rocky Mountain Office
633 17th Street, Suite 1600
Denver, CO 80202
T: 303-996-9621
F: 303-623-8083
hmcintosh@earthjustice.org
sgillespie@earthjustice.org
tdelehanty@earthjustice.org

*Counsel for Plaintiffs Center for Biological*
*Diversity, Maricopa Audubon Society,*
*and Sierra Club*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
TUCSON DIVISION

| | |
|---|---|
| Center for Biological Diversity, Maricopa Audubon Society, and Sierra Club, <br><br> Plaintiffs; <br> v. <br><br> Debra Haaland, in her official capacity as Secretary of the Interior; United States Fish and Wildlife Service; Aurelia Skipwith, in her official capacity as the Director of FWS; Amy Lueders, in her official capacity as Regional Director of the FWS Southwest Region; Lloyd Austin, in his official capacity as Secretary of Defense; John E. Whitley, in his official capacity as Acting Secretary of the Army; and Major General Anthony R. Hale, in his official capacity as the Senior Commander of Fort Huachuca, <br><br> Defendants. | Case No. 4:20-cv-00106-RCC <br><br> Judge: Raner C. Collins <br><br><br> **CONSERVATION GROUPS' MOTION TO COMPLETE OR SUPPLEMENT THE ADMINISTRATIVE RECORD** <br><br> Oral Argument Requested |

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 2

STANDARD OF REVIEW ........................................................................................ 6

ARGUMENT.............................................................................................................. 7

I.      The Agencies Must Complete the Administrative Record with the Five
        Documents They Considered But Withheld from the Court's Review................... 7

        A.  The Agencies Considered the Easement Report and Arizona Republic
            Article During the Consultation Process. ............................................................ 8

        B.  The Agencies Considered the Three New Studies Provided by the
            Conservation Groups but Refused to Reinitiate Consultation. ....................... 11

II.     The Agencies Must Supplement the Administrative Record with the Five
        Documents so that the Court Can Undertake a Meaningful Review ..................... 12

CONCLUSION .......................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Asarco, Inc. v. U.S. Envtl. Prot. Agency*,
  616 F.2d 1153 (9th Cir. 1980) ..............................................................7, 13, 14, 15

*Bay.org v. Zinke*,
  2018 WL 3965367 (E.D. Cal. Aug. 16, 2018) ...................................................12, 14

*California ex rel. Lockyer v. U.S. Dep't of Agric.*,
  2006 WL 708914 (N.D. Cal. Mar. 16, 2006)...........................................................10

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
  401 U.S. 402 (1971)..................................................................................................6

*Conservation Cong. v. Finley*,
  2012 WL 2989133 (N.D. Cal. June 28, 2012)........................................................13

*Ctr. for Biological Diversity v. Rumsfeld*,
  198 F. Supp. 2d 1139 (D. Ariz. 2002) ......................................................................3

*Ctr. for Biological Diversity v. Salazar*,
  804 F. Supp. 2d 987 (D. Ariz. 2011) ........................................................................3

*Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*,
  2007 WL 3049869 (N.D. Cal. Oct. 18, 2007)...........................................................9

*Ctr. for Biological Diversity v. Wolf*,
  447 F. Supp. 3d 965 (D. Ariz. 2020) ........................................................................7

*Ctr. for Native Ecosystems v. Salazar*,
  711 F. Supp. 2d 1267 (D. Colo. 2010).....................................................................15

*Cty. of San Miguel v. Kempthorne*,
  587 F. Supp. 2d 64 (D.D.C. 2008)............................................................................6

*Dist. Hosp. Partners v. Sebelius*,
  971 F. Supp. 2d 15 (D.D.C. 2013)............................................................................6

*Forest Guardians v. Kempthorne*,
  2008 WL 11337359 (S.D. Cal. Apr. 1, 2008).........................................................11

*Fund for Animals v. Williams*,
  391 F. Supp. 2d 191 (D.D.C. 2005).........................................................................12

*Golden Gate Salmon Ass'n v. Ross*,
  2018 WL 3129849 (E.D. Cal. June 22, 2018) ..........................................................9

*Inst. for Fisheries Res. v. Burwell*,
  2017 WL 89003 (N.D. Cal. Jan. 10, 2017) ..............................................................9

*In re U.S.*,
  138 S. Ct. 371 (2017) ...........................................................................6, 8, 12

*Lands Council v. Powell*,
  395 F.3d 1019 (9th Cir. 2005) ........................................................................7, 12

*Nat. Res. Def. Council v. Blank*,
  2013 WL 2450110 (N.D. Cal. June 5, 2013) ............................................................14

*Nat. Res. Def. Council v. Gutierrez*,
  2008 WL 11358008 (N.D. Cal. Jan. 14, 2008) ..........................................................10

*Oceana, Inc. v. Pritzker*,
  2017 WL 2670733 (N.D. Cal. June 21, 2017) ...........................................................7, 9, 10

*Portland Audubon Soc'y v. Endangered Species Comm.*,
  984 F.2d 1534 (9th Cir. 1993) ........................................................................6, 9, 11

*Pub. Power Council v. Johnson*,
  674 F.2d 791 (9th Cir. 1982) ..........................................................................11

*Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*,
  2017 WL 4642324 (N.D. Cal. Oct. 17, 2017) ............................................................9, 10

*Sierra Club v. Zinke*,
  2018 WL 3126401 (N.D. Cal. June 26, 2018) ...........................................................9

*Sierra Pac. Indus. v. U.S. Dep't of Agric.*,
  2011 WL 6749837 (E.D. Cal. Dec. 22, 2011) ..........................................................11

*Thompson v. U.S. Dep't of Labor*,
  885 F.2d 551 (9th Cir. 1989) ........................................................................6, 7, 11

## Statutes

5 U.S.C. § 706...........................................................................................6

**INTRODUCTION**

Plaintiffs Center for Biological Diversity *et al.* (the "Conservation Groups") respectfully request an order instructing the U.S. Fish and Wildlife Service ("Service") and Fort Huachuca ("Fort") (collectively the "Agencies") to complete the administrative record with five documents considered by the Agencies during the Endangered Species Act consultation process, but withheld from the record filed with the Court in this case.[1] The exclusion of these documents violates a fundamental principle of administrative law, namely that federal agencies are required to include in the record *all* documents directly or indirectly considered by the agency, and may not skew the record by excluding unfavorable information.  Though the Agencies considered but ultimately disregarded the facts contained within these five documents, that is not a basis for them to withhold the documents from the record and hinder this Court's thorough, probing, in-depth review of the 2014 Biological Opinion and the Agencies' subsequent decision not to reinitiate consultation.

Alternatively, the Conservation Groups respectfully request an order instructing the Agencies to supplement the administrative record with these five documents, which demonstrate that the Agencies overlooked critical factors necessary to make an informed decision.  The Court cannot adequately discharge its duty to engage in meaningful judicial review if it is required to take the Agencies' word that they considered all relevant matters, when they simply refused to consider the key facts set forth in these documents.

---

[1] The Conservation Groups attached these five documents to their opening motion for summary judgment to demonstrate that the Agencies failed to consider the relevant factors and overlooked contrary evidence in violation of the Administrative Procedure Act and Endangered Species Act.  *See* ECF Nos. 19-1, 19-3–19-6; *see also* Mem. in Supp. Mot. Summ. J., ECF No. 18 at 22 n.3 (explaining basis for providing Court with these five documents).

1

Accordingly, the Conservation Groups respectfully request an order directing the Agencies to complete and/or supplement the administrative record with the following five documents:

- The October 22, 2013 report titled "Three Canyons/Palominas Parcel, AZ Conservation Easement Documentation Report," which was attached as Exhibit 1 to the Conservation Groups' Statement of Facts, ECF 19-1 (hereinafter "Easement Report");

- The September 2, 2007 newspaper article from the Arizona Republic titled "The Battle Over a Dying River," which was attached as Exhibit 3 to the Conservation Groups' Statement of Facts, ECF 19-3 (hereinafter "Arizona Republic Article");

- The June 19, 2019 presentation by the Cochise Conservation and Recharge Network to the Upper San Pedro Partnership Technical Committee titled "Ephemeral Streamflow, Groundwater, and Palominas Facility Monitoring," which was attached as Exhibit 4 to the Conservation Groups' Statement of Facts, ECF 19-4 (hereinafter "CCRN Presentation");

- The 2017 report in the Fourth National Climate Assessment authored by R.S. Vose et al. titled "Temperature Changes in the United States," which was attached as Exhibit 5 to the Conservation Groups' Statement of Facts, ECF 19-5 (hereinafter "Climate Science Report"); and

- The November 21, 2019 hydrological study of the Upper San Pedro River Basin by Dr. Robert Prucha titled "Evaluation of Impacts of Fort Huachuca Long-term Well Pumping and Recharge on San Pedro River Stream Flow (from 2011 to 2100)," which was attached as Exhibit 6 to the Conservation Groups' Statement of Facts, ECF 19-6 (hereinafter "Prucha Hydrology Report").

## BACKGROUND

The San Pedro River is one of the last, major free-flowing rivers in the Desert Southwest, a sanctuary for millions of migratory birds, and home to multiple endangered species. *See* Conservation Groups' Statement of Facts, ECF No. 19 ("SOF") ¶¶ 1, 4–6. Groundwater pumping, however, has already begun to dry up the River and its riparian vegetation and springs, leaving little to no water to spare for these threatened and endangered species. SOF ¶¶ 32–37.

For over two decades, the Agencies have failed to comply with their obligation under the Endangered Species Act to ensure that the Fort's groundwater pumping does not jeopardize listed species or critical habitat that depend on the San Pedro River for their survival. *See Ctr. for Biological Diversity v. Rumsfeld*, 198 F. Supp. 2d 1139, 1156 (D. Ariz. 2002); *Ctr. for Biological Diversity v. Salazar*, 804 F. Supp. 2d 987, 1002 (D. Ariz. 2011).

Despite these rulings, the Agencies again attempted to sidestep their obligations under the Endangered Species Act by masking the adverse impacts of the Fort's groundwater pumping on listed species. In the 2014 Biological Opinion, the Agencies claimed that the Fort would completely offset its groundwater pumping—estimated at 5,648 acre-feet of groundwater per year. SOF ¶¶ 51, 75. To reach that conclusion, the Service granted the Fort a water credit for obtaining an easement on the Preserve Petrified Forest property. SOF ¶ 83. The Service assumed that the easement retired agricultural irrigation on the property, and thus granted the Fort the maximum credit of 2,588 AFY. *Id*. Based on that credit, the Agencies asserted that the Fort would create a "mathematically anticipated . . . net groundwater surplus" from 2014 onwards, thereby avoiding jeopardy to listed species and critical habitat. SOF ¶ 75.

But the easement does not retire an actual water use: irrigation on the Preserve Petrified Forest Property ceased in 2005, almost a decade before the Fort obtained the easement. SOF ¶¶ 78, 82.[2] The Agencies acknowledged that it was "uncertain[]" when irrigation might recommence on the property, if ever. SOF ¶ 82. But they did not address two pieces of evidence showing that irrigation was virtually certain <u>not</u> to recommence. *See* Mem. in Supp. of Mot. for Summ. J., ECF No. 18, at 32–34 (hereinafter "MSJ"). First, the Agencies speculated that future irrigation might be possible because the "entire irrigation infrastructure remains in place." SOF ¶ 83. But the Fort was provided with a

---

[2] Because the easement does not offset any actual water use, it does "not result in an increase in flows in adjoining streams." SOF ¶ 82.

report during the consultation process that surveyed the property and clearly stated that the "center pivots . . . are no longer present on the parcel" and that irrigation "ceased" in 2006, if not earlier.  *See* Easement Report, ECF 19-1 at 3, 5) (discussed at SOF ¶ 83).

Second, the Agencies contributed to an article in Arizona's largest newspaper explaining that the Preserve Petrified Forest property was listed for sale based on the fact that "the land is zoned to build up to 161 residences."  *See* Arizona Republic Article, ECF No. 19-3 at 3; *see also* SOF ¶¶ 79–80 (explaining that property was zoned, listed, marketed, and sold for residential development).  This article demonstrates that the Preserve Petrified Forest property was marketed for residential development, and thus refutes the Agencies' speculation about agriculture production.

Rather than confronting this contrary evidence, the Agencies simply excluded the Easement Report and Arizona Republic Article from the administrative record.  Doing so enabled the Agencies to falsely claim the maximum credit possible for retiring hypothetical alfalfa irrigation that ceased almost a decade prior and was almost certain to never occur again in the future.[3]

The Conservation Groups also alerted the agencies to significant new information and requested that they reinitiate consultation in a letter sent to the Agencies on December 3, 2019.  SOF ¶ 130; MSJ at 52–55.  In support of that request, the Conservation Groups provided the Agencies with three new studies showing adverse impacts to listed species and critical habitat.  *See* Ex. 1, Decl. of Robin Silver at ¶ 7.  The first study reveals significant shortfalls in the Fort's promise to recharge groundwater. *See* CCRN Presentation, ECF 19-4 (discussed at SOF ¶ 118).  The second study shows that climate change will have a more rapid and severe impact in the Desert Southwest than previously anticipated.  *See* Climate Science Report, ECF No. 19-5 (discussed at

---

[3] As a residential property with 161 units, the Preserve Petrified Forest would have used 53.1 afy, which is a small fraction of the purported water savings claimed by the Service for hypothetical alfalfa irrigation (2,588 afy).  *See* MSJ at 33; SOF ¶¶ 80, 90.

SOF ¶ 120).  The third hydrological study shows that Fort-attributable pumping will cause significant declines in baseflows and groundwater elevations along the San Pedro and Babocomari Rivers.  *See* Prucha Hydrology Report, ECF No. 19-6 (discussed at SOF ¶¶ 121–25).  Based on these studies, the Conservation Groups urged the Agencies to reinitiate consultation to analyze this significant new information.  SOF ¶ 130; MSJ at 52–55.  Despite acknowledging receipt of these studies, the Agencies refused to reinitiate consultation, Silver Decl. at ¶ 7, and then omitted the studies from the administrative record lodged with the Court.

Given the Agencies' refusal to provide these five documents to the Court, the Conservation Groups attached them to their motion for summary judgment to ensure that the Court can review the 2014 Biological Opinion and the Agencies' decision not to reinitiate consultation based on the whole record before the Agencies.  *See* ECF Nos. 19-1–19-6.  Though the Agencies clearly possessed and considered these documents, MSJ at 22 n.5,[4] Defendants raised concerns about the documents when the parties met and conferred about Defendants' request for a two-month extension of the briefing schedule.  Unopposed Mot. for Revised Scheduling Order, ECF No. 22 at ¶ 4.  The Conservation Groups thus agreed to file this motion explaining that the administrative record is incomplete because the Agencies excluded documents considered during the consultation process.  *Id.*  Alternatively, if the Agencies failed to consider these documents, supplementation is necessary for the Court to determine whether the Agencies entirely overlooked relevant factors.

---

[4] The Conservation Groups attached a sixth document to their SOF, which is an email chain demonstrating that the Easement Report was provided to the Fort's point of contact (Mr. Daniel Haws) during the consultation process.  Email from Britt Hanson to Daniel Haws, FW: Preserve Petrified Forest—Cochise County FCD (Nov. 20, 2013) (attached as ECF No. 19-2) (discussed at SOF ¶ 78 n.3).

## STANDARD OF REVIEW

The APA directs this Court to evaluate agency decisions based on "the whole record."  5 U.S.C. § 706; *see also Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971).  The "whole record" includes "all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position."  *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (emphasis omitted).  The Ninth Circuit has thus defined the record as "everything that was before the agency pertaining to the merits of its decision."  *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993) (distinguishing between materials "never presented to the agency" and materials that were "allegedly . . . before the agency").

An incomplete administrative record is a "fictional account of the actual decision-making process."  *Id.* at 1548.  "If the record is not complete, then the requirement that the agency decision be supported by 'the record' becomes almost meaningless," *id.*, and "the reviewing court cannot engage in the 'thorough, probing, in-depth review' that the APA requires."  *In re U.S.*, 138 S. Ct. 371, 372 (2017) (quoting *Overton Park*, 401 U.S. at 415–16).

Documents contrary to the agency's decision must therefore be included in the administrative record for effective judicial review of a challenge to that agency's decision.  *See Thompson*, 885 F.2d at 555; *Dist. Hosp. Partners v. Sebelius*, 971 F. Supp. 2d 15, 20 (D.D.C. 2013) ("[A]n agency may not skew the record by excluding unfavorable information.") (internal quotation marks omitted), *aff'd sub nom. Dist. Hosp. Partners. v. Burwell*, 786 F.3d 46 (D.C. Cir. 2015).  This requirement "ensures that neither party is withholding evidence unfavorable to its position and that the agencies are not taking advantage of post hoc rationalizations for administrative decisions."  *Cty. of San Miguel v. Kempthorne*, 587 F. Supp. 2d 64, 71 (D.D.C. 2008).

A party seeking to complete the record with documents excluded by an agency "must identify the allegedly omitted materials with sufficient specificity and identify reasonable, non-speculative grounds for the belief that the documents were considered by the agency and not included in the record." *Oceana, Inc. v. Pritzker*, 2017 WL 2670733, at *2 (N.D. Cal. June 21, 2017) (internal quotation marks omitted).  Such "clear evidence" rebuts the presumption that the record is complete.  *Id.*; *see also Ctr. for Biological Diversity v. Wolf*, 447 F. Supp. 3d 965, 973 (D. Ariz. 2020).

Alternatively, the Court may permit supplementation of the record

> (1) if the admission is necessary to determine whether the agency has considered all relevant factors and has explained its decision, (2) if the agency has relied on documents not in the record, (3) when supplementing the record is necessary to explain technical terms or complex subject matter, or (4) when plaintiffs make a showing of agency bad faith.

*Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (internal quotation marks omitted).  Supplementation is appropriate because it may not be possible for the Court to "adequately discharge its duty to engage in a 'substantial inquiry' if it is required to take the agency's word that it considered all relevant matters."  *Asarco, Inc. v. U.S. Envtl. Prot. Agency*, 616 F.2d 1153, 1160 (9th Cir. 1980).

## ARGUMENT

I.   **The Agencies Must Complete the Administrative Record with the Five Documents They Considered But Withheld from the Court's Review.**

The Conservation Groups have provided reasonable, non-speculative grounds that the Agencies considered the five documents identified above, necessitating their inclusion in the administrative record.  Though the Agencies turned a blind eye on the evidence contained in these documents, that does not permit them to exclude this contrary information from the administrative record.  *Thompson*, 885 F.2d at 555.  Doing so would hinder the Court's "thorough, probing, in-depth review" of the 2014 Biological Opinion

and decision not to reinitiate consultation.  *In re U.S.*, 138 at 372 (quoting *Overton Park*, 401 U.S. at 415–16).

### A. The Agencies Considered the Easement Report and Arizona Republic Article During the Consultation Process.

The Conservation Groups have presented concrete evidence showing that the Agencies considered the Easement Report during the consultation process leading up to the May 16, 2014 Biological Opinion.  On November 20, 2013, Cochise County[5] sent the Easement Report to Mr. Daniel Haws "[f]or your records."  ECF No. 19-2.  Mr. Haws was the point of contact for the Fort during the consultation process, FWS002860; FWS003325, and submitted the Fort's formal request for consultation with the Service five days after receiving the Easement Report.  FWS001475; FWS001483.  Through that process, he participated in multiple meetings, *see e.g.*, ARMY 025709; ARMY 025692, and specifically oversaw the Fort's attempt to claim 2,588 afy of water savings for the Preserve Petrified Forest property.  FWS001688 (email from Mr. Haws providing calculations for the Service to use); *see also, e.g.*, FWS001950 (email to Mr. Haws discussing a letter from the Service to the Fort regarding water credits for "the pending conservation easement").

Furthermore, the Easement Report speaks directly to the Agencies' false assumption that the easement retired agricultural irrigation.  The report states that "the property ceased center pivot agricultural irrigation operations for alfalfa crops in 2006"— almost ten years before the Fort obtained the easement.  Easement Report, ECF No. 19-1 at 3.  It also states that the "center pivots . . . are no longer present on the parcel," *id.* at 5, which defies the Agencies' incorrect assertion that the "entire irrigation infrastructure remains in place," which was the basis for claiming the purported water credits.  SOF ¶ 83.

---

[5] Under the terms of the easement, Cochise County may develop up to twelve large (40-acre) residential homes on the property.  SOF ¶ 81.

There is thus no dispute that the Easement Report was provided to a key
subordinate directly responsible for claiming water credits for Preserve Petrified Forest
property.[6]  Furthermore, the Easement Report directly refutes the Agencies' false
assumption that the easement retired agricultural irrigation.  The Easement Report "was
before the agency, at least indirectly, as part of its decision making process" and thus
must be included in the administrative record so that the Court can determine whether the
2014 Biological Opinion is supported by the evidence.  *Ctr. for Biological Diversity v.
U.S. Bureau of Land Mgmt.*, 2007 WL 3049869, at *4 (N.D. Cal. Oct. 18, 2007); *Regents
of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 2017 WL 4642324, at *3 (N.D. Cal. Oct.
17, 2017) ("[T]he administrative record should include all documents and materials
prepared, reviewed, or received by agency personnel and used by or available to the
decision-maker.") (internal quotation marks and alteration omitted); *see also Portland
Audubon*, 984 F.2d at 1548 (compelling inclusion of documents that were "allegedly . . .
before the agency," as opposed to "never presented to the agency").

    Indeed, it is "beyond credulity" for the Agencies to claim that they did not
consider the Easement Report that analyzed the property that was the cornerstone of their
claimed water surplus and basis for sidestepping a jeopardy finding.  *Golden Gate
Salmon Ass'n v. Ross*, 2018 WL 3129849, at *10 (E.D. Cal. June 22, 2018).  The
Conservation Groups have thus presented "clear evidence" demonstrating that the
Agencies improperly omitted the Easement Report, *Pritzker*, 2017 WL 2670733, at *2,
thereby satisfying their burden of demonstrating that the administrative record is
incomplete.  *See Inst. for Fisheries Res. v. Burwell*, 2017 WL 89003, at *1 (N.D. Cal.
Jan. 10, 2017) (If "at least one document was inadvertently omitted from the record, the

---

[6] The Conservation Groups obtained the Easement Report from the Fort's own files via a
Freedom of Information Act (FOIA) request submitted to the agencies, Silver Decl. ¶ 5,
which is further proof that the document must be included in the administrative record.
*See, e.g.*, *Sierra Club v. Zinke*, 2018 WL 3126401, at *4 (N.D. Cal. June 26, 2018)
(admitting emails and internal memos on a BLM rule that were obtained via FOIA).

plaintiffs have met their burden to overcome the presumption that the administrative record is complete.").

The Agencies also improperly excluded the Arizona Republic Article, which speaks to the same integral issue as the Easement Report and includes quotes from the Agencies themselves.  The article explains that the Preserve Petrified Forest was marketed and listed for sale based on its zoning for residential development, not agricultural production.  ECF No. 19-3 at 3.  Furthermore, representatives from the Fort and Service contributed to the article with quotes discussing the Fort's obligations to comply with the Endangered Species Act.  *Id.* at 1–2 (Jeffrey Humphrey of the Service and Tanja Linton of the Fort).  It strains credulity for the Agencies to claim that they did not at least indirectly consider this article from Arizona's largest newspaper documenting the history of the Preserve Petrified Forest Property—the linchpin of the Agencies' mitigation efforts—with quotes from Agency personnel.  The article must therefore be included in the record.  *See Regents*, 2017 WL 4642324, at *2 (The "whole record . . . includes not only documents that literally passed before the eyes of the final agency decision maker but also documents that were considered and relied upon by subordinates.") (internal quotation marks and alteration omitted).

The Court should reject the Agencies' attempt to exclude these documents from the administrative record and thereby withhold unfavorable information from judicial review.  *California ex rel. Lockyer v. U.S. Dep't of Agric.*, 2006 WL 708914, at *2 (N.D. Cal. Mar. 16, 2006) ("[A]n agency may not exclude information on the grounds that it did not rely on the excluded information . . . where there was evidence that the information was reviewed."); *Pritzker*, 2017 WL 2670733, at *5 ("[M]aterial considered, but then discounted or otherwise not relied upon, is part of the record.").  By omitting these documents, the Agencies "have improperly and prejudicially excluded material before the agency."  *Nat. Res. Def. Council v. Gutierrez*, 2008 WL 11358008, at *5 (N.D. Cal. Jan. 14, 2008) (internal quotation marks omitted).  To permit full and proper judicial review,

10

the Agencies must provide the Court with everything they considered, which necessarily "includes evidence contrary to the agency's position." *Thompson*, 885 F.2d at 555; *Forest Guardians v. Kempthorne*, 2008 WL 11337359, at *3 (S.D. Cal. Apr. 1, 2008) ("'Everything' includes information that is both favorable and unfavorable.").

### B. The Agencies Considered the Three New Studies Provided by the Conservation Groups But Refused to Reinitiate Consultation.

The Conservation Groups provided the Agencies with three significant new studies—the CCRN Presentation, the Climate Science Report, and the Prucha Hydrology Report—and urged them to reinitiate consultation. *See* Silver Decl. at ¶ 7. The Fort acknowledged receipt of these documents, but refused to reinitiate consultation. *Id.*; SOF ¶ 130. It is thus undisputed that the Agencies had these documents before them when they denied the Conservation Groups' request to reinitiate consultation, meaning they are part of the administrative record for that decision. *Portland Audubon*, 984 F.2d at 1548; *Pub. Power Council v. Johnson*, 674 F.2d 791, 794 (9th Cir. 1982) (The whole record encompasses "all the evidence that was before the decision-making body."); *see also Sierra Pac. Indus. v. U.S. Dep't of Agric.*, 2011 WL 6749837, at *2 (E.D. Cal. Dec. 22, 2011) ("Because the three letters on which [an agency attorney] was copied address the subject matter at issue in this case and were before the decision-making agency, plaintiff's motion [to complete the administrative record] is granted with respect to this correspondence.").

Yet, the agencies now seek to withhold these key documents from the administrative record, as if they never existed. That tactic flatly contravenes their obligation to provide the Court with the "whole record." *Thompson*, 885 F.2d at 555. Worse yet, the Agencies have impermissibly cherry-picked the new information they included in the administrative record. *See Forest Guardians*, 2008 WL 11337359, at *3 ("Agencies can not cherry pick information that supports a decision and fail to reveal information that contradicts it."). For example, the Fort included a set of "post-decisional

11

documents" in the administrative record,[7] but simultaneously refused to include the new

information provided by the Conservation Groups, which highlights the Agencies'

obligation to reinitiate consultation.  MSJ at 52–55.  This skewed record hinders judicial

review of the Conservation Groups' reinitiation claim.  *See Fund for Animals v. Williams*,

391 F. Supp. 2d 191, 197 (D.D.C. 2005) ("The agency may not skew the record in its

favor by excluding pertinent but unfavorable information.").

      The Agencies' refusal to include these significant new studies in the

administrative record also leads to an absurd result whereby the Agencies could simply

insulate their decision not to reinitiate consultation from judicial review by withholding

significant new information from the Court's review—precisely the scenario that has

occurred here.  That self-serving approach would defeat judicial review and must

therefore be rejected.  *See In re U.S.*, 138 S. Ct. at 372 ("[J]udicial review cannot function

if the agency is permitted to decide unilaterally what documents it submits to the

reviewing court as the administrative record.").

## II.    The Agencies Must Supplement the Administrative Record With the Five Documents so that the Court Can Undertake a Meaningful Review.

      Alternatively, the Conservation Groups move to supplement the record with the

five documents, because they contain critical information showing that the Agencies

entirely overlooked relevant factors in violation of the APA and Endangered Species Act.

      The Court may supplement the administrative record "to determine whether the

agency has considered all factors and explained its decision."  *Lands Council*, 395 F.3d at

1030 (internal quotation marks omitted).  To satisfy this "relevant factors" exception, the

plaintiff must show that the document does "more than raise 'nuanced points' about a

particular issue; it must point out an 'entirely new' general subject matter that the

defendant agency failed to consider."  *Bay.org v. Zinke*, 2018 WL 3965367, at *7 (E.D.

---

[7] The Fort's Administrative Record Index includes a set of "Post-Decisional Records"
that post-date the 2014 Biological Opinion.  *See* ECF 15-2 at 13–14.

Cal. Aug. 16, 2018).  Furthermore, the plaintiff must show that supplementation is necessary because the court cannot "determine whether the agency took into consideration all relevant factors unless it looks outside the record to determine what matters the agency should have considered but did not."  *Asarco*, 616 F.2d at 1160; *Conservation Cong. v. Finley*, 2012 WL 2989133, at *6 n.6 (N.D. Cal. June 28, 2012) ("The Court cannot possibly determine whether Defendants considered the purportedly relevant factors highlighted by the extra-record declarations without first considering those declarations.").

Here, the Easement Report and Arizona Republic article show that the Agencies entirely overlooked at least two relevant factors in claiming water credits for the Preserve Petrified Forest Property.  To comply with the Endangered Species Act, the Agencies had an obligation to demonstrate that the easement retired an actual water use—agricultural irrigation according to the Agencies—that was "reasonably certain" to occur.  MSJ at 30 (citing *Nat'l Wildlife Fed'n*, 524 F.3d at 935–36); *see also* SOF ¶ 82 ("conservation easements do not result in an increase in flows in adjoining streams unless an active water use is retired.").  Yet, the Agencies provided no analysis or evidence regarding (1) whether the irrigation infrastructure was in place on the Preserve Petrified Forest property, and (2) whether the property would be developed for residential homes as opposed to agriculture.  Without considering these factors, it was impossible for the Agencies to rationally conclude that agricultural irrigation was reasonably certain to occur absent the easement.

Rather than considering these factors—which necessarily requires evaluating the relevant evidence—the Agencies falsely assumed in one conclusory sentence that "the entire irrigation infrastructure remains in place."  FWS004639; FWS001609; SOF ¶ 83. Based on that factually inaccurate statement, and without considering the use of the property for residential development, the Agencies proceeded to claim the maximum water credits for offsetting hypothetical alfalfa irrigation.  But the Easement Report

defies their assumption about the irrigation infrastructure, and the Arizona Republic article demonstrates the property was marketed for residential development, not agricultural irrigation.  The Agencies thus not only failed to demonstrate irrigation was reasonably certain, but disregarded key factors, including the facts on the ground, showing that irrigation was highly unlikely to occur.  MSJ at 33.

This is not a minor oversight or "question of nuance; rather, th[ese] 'relevant factor[s]' at least arguably go[] to the heart of the mitigation measures proposed" by the Fort.  *Bay.org*, 2018 WL 3965367, at *11.  The easement did not offset any actual water use, and thus does not provide the "necessary biological response" to ensure against jeopardy to listed species.  MSJ at 31 (quoting *Nat'l Wildlife Fed'n*, 839 F. Supp. 2d at 1128).  Without this illusory water credit, there is no basis for the Agencies' claimed groundwater surplus and thus no basis for their no jeopardy conclusion.  *Id.* at 33.

Without these documents, the Court would be unable to check the integrity of the claimed water savings, as these factors and the evidence encompassing them are critical to determining whether irrigation was reasonably certain to occur.  Instead, the Court would have to accept the Agencies' conclusory assertions—an approach that would defeat judicial review and defy the facts on the ground.  *See Asarco*, 616 F.2d at 1160 ("The court cannot adequately discharge its duty to engage in a 'substantial inquiry' if it is required to take the agency's word that it considered all relevant matters.").  The documents are thus essential for this Court's review of proposed easement, which was a cornerstone of the no-jeopardy conclusion in the 2014 Biological Opinion.  *See Bay.org*, 2018 WL 3965367, at *11 (supplementing record with document showing mitigation measure was not "reasonably certain" to occur); *Nat. Res. Def. Council v. Blank*, 2013 WL 2450110, at *3 (N.D. Cal. June 5, 2013) (supplementing the record with declarations and documents showing the agency had mischaracterized locations of several marine protection areas).

14

Similarly, the CCRN Presentation, Climate Science Article, and Prucha Hydrology Report demonstrate that the Agencies failed to reinitiate consultation to consider significant new information, thereby violating the Endangered Species Act.  MSJ 52–55.  The administrative record entirely omits this new information revealing the adverse impacts of the Fort's pumping, and thus hamstrings the Court's ability to "determine whether the agency took into consideration all relevant factors unless it looks outside the record to determine what matters the agency should have considered but did not." *Asarco*, 616 F.2d at 1160.  Supplementation is therefore necessary.  Otherwise, the Agencies "could exclude documents and materials from the administrative record by intentionally deciding not to review them," and thereby "significantly skew the record in its favor.  This is inconsistent with the meaningful judicial review required by *Overton Park*."  *Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1281 (D. Colo. 2010).

## CONCLUSION

For the foregoing reasons, the Conservation Groups respectfully request an order instructing the Agencies to complete or, in the alternative, supplement the administrative record with the five documents.

Respectfully submitted this 26th day of March, 2021,

/s/ Stuart Gillespie
Stuart C. Gillespie
Heidi McIntosh
Thomas Delehanty
Earthjustice, Rocky Mountain Office
633 17th Street, Suite 1600
Denver, CO 80202
T: 303-996-9616
F: 720-550-5757
sgillespie@earthjustice.org
hmcintosh@earthjustice.org
tdelehanty@earthjustice.org

15

*Counsel for Plaintiffs Center for Biological Diversity,*
*Maricopa Audubon Society, and Sierra Club*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of March, 2021, a true and correct copy of the foregoing **CONSERVATION GROUPS' MOTION TO COMPLETE OR SUPPLEMENT THE ADMINISTRATIVE RECORD** was filed via CM/ECF Filing System upon the parties of record.

*/s/ Stuart Gillespie*
Stuart Gillespie