JEAN E. WILLIAMS
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
JOHN H. MARTIN
Trial Attorney, CO Bar 32667
Wildlife & Marine Resources Section
999 18th St., South Terrace Suite 370
Denver, CO 80202
john.h.martin@usdoj.gov
Tel: (303) 844-1383

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY *et al.*, <br>          Plaintiffs, <br><br> v. <br><br> DEBRA HAALAND, Secretary of the Interior, *et al.*, <br>          Defendants, | Case No. CV-20-00106-TUC-RCC <br><br> DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPLETE AND SUPPLEMENT THE AGENCIES' ADMINISTRATIVE RECORDS |

# TABLE OF CONTENTS

PAGE

INTRODUCTION .................................................................................................. 1

STANDARD OF REVIEW ................................................................................... 1

ARGUMENT .......................................................................................................... 4

I.  The Agencies' administrative records are complete. ...................................... 4

    A.  Plaintiffs have not shown the Army considered the Easement Report. ................ 4

    B.  Plaintiffs have not shown either agency considered the Arizona Republic article. .................................................................................................... 8

    C.  Plaintiffs' three studies are inadmissible to complete either agency administrative record. ................................................................................................... 9

II.  Plaintiffs may not supplement either agency's administrative record with the five extra-record documents. ............................................................................... 12

CONCLUSION ..................................................................................................... 17

# TABLE OF AUTHORITIES

CASES
PAGE(S)

*Animal Def. Council v. Hodel*,
  840 F.2d 1432 (9th Cir. 1988)..........................................................................2, 5, 14

*Asarco, Inc. v. U.S. EPA*,
  616 F.2d 1153 (9th Cir.1980)............................................................................4

*Bar MK Ranches v. Yuetter*,
  994 F.2d 735 (10th Cir. 1993)...........................................................................3

*Bark v. Northrop*,
  2 F. Supp. 3d 1147 (D. Or. 2014)....................................................................15

*Biodiversity Legal Found. v. Norton*,
  180 F. Supp. 2d 7 (D.D.C. 2001) ...................................................................11

*Camp v. Pitts*,
  411 U.S. 138 (1973) ..........................................................................................2

*Cape Hatteras Access Pres. All. v. U.S. Dep't of Interior*,
  667 F. Supp. 2d 111 (D.D.C. 2009) .................................................................3

*Ctr. For Biological Diversity v. U.S. EPA*,
  90 F. Supp. 3d 1177 (W.D. Wash. 2015) .......................................................10

*Ctr. for Biological Diversity v. U.S. Fish and Wildlife Serv.*,
  450 F.3d 930 (9th Cir. 2006)...............................................................3, 10, 13

*Fence Creek Cattle Co. v. U.S. Forest Serv.*,
  602 F.3d 1125 (9th Cir. 2010)......................................................................4, 15

*Friends of the Clearwater v. Higgins*,
  2021 WL 827015 (D. Idaho Mar. 4, 2021) ....................................................10

*Friends of the Earth v. Hintz*,
  800 F.2d 822 (9th Cir. 1986)..........................................................................2, 4

*In re Delta Smelt Consol. Cases*,
  2010 WL 2520946 (E.D. Cal. June 21, 2010).................................................15

*In re Doud,*
  74 B.R. 865 (Bankr. S.D. Iowa 1987)...........................................................5, 6

*Karuk Tribe of Cal. v. U.S. Forest Serv.*,
  681 F.3d 1006 (9th Cir. 2012).........................................................................11

*Lands Council v. McNair*,
  537 F.3d 981 (9th Cir. 2008).............................................................................2

*Lands Council v. Powell*,
   395 F.3d 1019 (9th Cir. 2005)..................................................................... 4, 12

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ........................................................................ 5

*McCrary v. Gutierrez*,
   495 F. Supp. 2d 1038 (N.D. Cal. 2007)............................................... 2, 3, 9

*Native Ecosystems Council v. Weldon*,
   848 F. Supp. 2d 1207 (D. Mont. 2012) ......................................................... 8

*Nw. Env't Advocs. v. Nat'l Marine Fisheries Serv.*,
   460 F.3d 1125 (9th Cir. 2006)....................................................................... 4

*Occidental Eng'g Co. v. Immigr. & Naturalization Serv.*,
   753 F.2d 766 (9th Cir. 1985)......................................................................... 2

*Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*,
   448 F. Supp. 2d 1 (D.D.C. 2006) .................................................................. 3

*Parravano v. Babbitt*,
   837 F. Supp. 1034 (N.D. Cal. 1993).............................................................. 3

*Pinnacle Armor v. United States*,
   923 F. Supp. 2d 1226 (E.D. Cal. 2013) ........................................... 3, 8, 9, 15

*Pres. Endangered Areas of Cobb's Hist., Inc. v. U.S. Army Corps of Eng'rs*,
   87 F.3d 1242 (11th Cir. 1996)....................................................................... 8

*Pub. Power Council v. Johnson*,
   674 F.2d 791 (9th Cir. 1982)...................................................................... 3, 4

*Rybacheck v. U.S. EPA*,
   904 F.2d 1276 (9th Cir. 1990)..................................................................... 15

*S.F. BayKeeper v. Whitman*,
   297 F.3d 877 (9th Cir. 2002)....................................................................... 12

*San Luis & Delta-Mendota Water Auth. v. Jewell*,
   747 F.3d 581 (9th Cir. 2014)....................................................................... 18

*San Luis & Delta-Mendota Water Auth. v. Locke*,
   776 F.3d 971 (9th Cir. 2014)....................................................................... 18

*San Luis & Delta-Mendota Water Auth. v. U.S. Dep't of Interior*,
   984 F. Supp. 2d 1048 (E.D. Cal. 2013) ....................................................... 11

*Sequoia Forestkeeper v. U.S. Forest Serv.*,
   2010 WL 2464857 (E.D. Cal. June 12, 2010)................................................ 8

*South Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*,
   2008 WL 3932358 (E.D. Cal. Aug. 26, 2008) ............................................... 8

*Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*,
  100 F.3d 1443 (9th Cir. 1996) ................................................................. 3

*Thompson v. U.S. Dep't of Labor*,
  885 F.2d 551 (9th Cir. 1989) ................................................................... 2

*Univ. of Wash. v. Sebelius*,
  2011 WL 6447806 (W.D. Wash. Dec. 22, 2011) .................................. 15

*United States v. Doud,*
  1987 WL 46813 (S.D. Iowa Dec. 4, 1987) ............................................. 5

*Winnemem Wintu Tribe v. U.S. Forest Serv.*,
  2014 WL 3689699 (E.D. Cal. July 24, 2014) ....................................... 15

## STATUTES

5 U.S.C. § 706 ............................................................................................. 2

5 U.S.C. § 706(2)(A) .................................................................................. 2

16 U.S.C. § 1540(g)(2) ............................................................................. 10

# INTRODUCTION

The Court ordered Plaintiffs to file any motion to supplement or complete the administrative record(s) and/or motion for the Court to consider extra-record evidence on the merits by October 28, 2020, well before any summary judgment brief would be filed. ECF 14 at 2. Plaintiffs ignored that deadline without explanation or notice to Defendants, and instead filed their summary judgment motion with numerous citations to extra-record documents. Plaintiffs' summary judgment briefing on at least two of their claims is inextricably reliant on this extra-record evidence. When Defendants sought an extension of time to file their own first brief on summary judgment, in part to allow preparation of a motion to strike Plaintiffs' extra-record evidence, part of the agreement for the extension was to allow Plaintiffs to belatedly brief the motion they refused to file in October. ECF 22, 23.

Plaintiffs' belated motion now relies on their summary judgment briefing, especially their statement of facts, to explain their substantive arguments based on this evidence. This is the wrong focus for admission of extra-record evidence. The standards for admission of extra-record evidence do not focus, as Plaintiffs do, on the perceived unfairness of limiting judicial review to the agencies' certified administrative records, but instead on specific and objective analyses about the completeness of the existing administrative records. Plaintiffs do not satisfy the high burden of demonstrating that the agencies' existing administrative records omit the documents the agencies actually considered in developing their analyses. Nor do Plaintiffs prove, as they must, that the agencies' administrative records contain gaps or omissions on the several issues on which they claim their extra-record evidence is relevant. Plaintiffs' motion to complete and supplement the record with extra-record evidence should accordingly be denied.

# STANDARD OF REVIEW

Judicial review under the Administrative Procedure Act ("APA") is deferential, such that a court may only set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The task of the reviewing court is to apply this standard of review to the administrative record the agency presents to the reviewing court. *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988), *opinion amended by,* 867 F.2d 1244 (9th Cir. 1989); 5 U.S.C. § 706.

The administrative record consists of "all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (citation omitted). "Certainly, there may be issues of fact before the administrative agency. However, the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Eng'g Co. v. Immigr. & Naturalization Serv.*, 753 F.2d 766, 769 (9th Cir. 1985). Accordingly, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *Friends of the Earth v. Hintz*, 800 F.2d 822, 831 (9th Cir. 1986).

Each agency is entitled to a presumption of regularity that its officials properly discharged their official duties when designating the record. *McCrary v. Gutierrez*, 495 F. Supp. 2d 1038, 1041 (N.D. Cal. 2007) (citation omitted). The presumption derives from recognition "that the agency determines what constitutes the whole administrative record[,] because [i]t is the agency that did the considering, and that therefore is in a position to indicate initially which of the materials were before it - namely, were directly or indirectly considered." *Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006) (quotation marks and citation omitted).

2

A plaintiff seeking to complete an administrative record must overcome this presumption by producing clear evidence to the contrary. *McCrary*, 495 F. Supp. 2d at 1041-42; *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996); *see also Pinnacle Armor v. United States*, 923 F. Supp. 2d 1226, 1239-40 (E.D. Cal. 2013) (A "[p]laintiff must identify reasonable, non-speculative grounds for its belief that the documents were considered by the decision makers involved in the determination.") (citations and internal quotations omitted); *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993); *Cape Hatteras Access Pres. All. v. U.S. Dep't of Interior*, 667 F. Supp. 2d 111, 114 (D.D.C. 2009) (A "plaintiff must overcome this strong presumption of regularity by putting forth concrete evidence that the documents it seeks to 'add' to the record were actually before the decisionmakers.").

A plaintiff seeking to supplement an administrative record also faces a demanding burden to prove the limited circumstances that warrant expanding judicial review beyond the agency's administrative record. *Pub. Power Council v. Johnson*, 674 F.2d 791, 793 (9th Cir. 1982). An agency's record may be supplemented: (1) when necessary to determine whether the agency has considered all relevant factors and has explained its decision; (2) when the agency has relied on documents not in the record; (3) when necessary to explain technical terms or complex subject matter; or (4) when the plaintiffs make a showing of agency bad faith. *Ctr. for Biological Diversity v. U.S. Fish and Wildlife Serv.*, 450 F.3d 930, 943 (9th Cir. 2006). "It is the plaintiffs' burden to demonstrate that one or more of these exceptions apply." *Parravano v. Babbitt*, 837 F. Supp. 1034, 1039 (N.D. Cal. 1993) aff'd, 70 F.3d 539 (9th Cir. 1995).

The Ninth Circuit has recognized these "narrow exceptions" to the record review rule and made it clear that these exceptions are to be "narrowly construed and applied" so that they "do[] not undermine the general rule." *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005); *Johnson*, 674 F.2d at 794 (exceptions must be applied cautiously to

avoid swallowing the rule). "Were the federal courts routinely or liberally to admit new evidence when reviewing agency decisions, it would be obvious that the federal courts would be proceeding, in effect, *de novo* rather than with the proper deference to agency processes, expertise, and decision-making." *Lands Council*, 395 F.3d at 1030 (emphasis added); *see also Nw. Env't Advocs. v. Nat'l Marine Fisheries Serv.*, 460 F.3d 1125, 1144 (9th Cir. 2006).

Plaintiffs have the "heavy burden" of showing that their extra-record documents fall within one of these narrow exceptions to the record review rule and are "<u>necessary</u> to adequately review the [agency]'s decision." *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010) (emphasis added). Supplementation (or completion) of a record is not allowed based on the mere proposition that the agency should have considered other information. *See, e.g., Asarco, Inc. v. U.S. EPA*, 616 F.2d 1153, 1160 (9th Cir.1980) ("Consideration of the evidence to determine the correctness or wisdom of the agency's decision is not permitted[.]"). Nor will supplementation be permitted merely to bolster the record or supply background information. *Hintz*, 800 F.2d at 829 ("The discovery sought by the appellants might have supplied a fuller record, but otherwise does not address issues not already there.") (footnote omitted). Rather, the moving party must demonstrate instead that failure to supplement the record will "effectively frustrate[] judicial review." *Hodel*, 840 F.2d at 1436.

## ARGUMENT

## I.  The Agencies' Administrative Records Are Complete.

### A.  Plaintiffs have not shown the Army considered the Easement Report.

As an initial matter, Defendants would not oppose the Court's taking judicial notice of the Easement Report, on the condition that the Court also takes judicial notice of and considers as extra-record evidence: (1) the Deed of Perpetual Conservation Easement for the Preserve Petrified Forest property, and (2) the North Dakota State

University Extension Service article by Tom Scherer, Selecting a Sprinkler Irrigation System (2018). Defendants attached both of these documents as exhibits to their Combined Cross-motion for Summary Judgment, as their Exhibits B and C. ECF 26-3 and ECF 26-4. The Court may take judicial notice of the Easement Report because it is incorporated as an exhibit to the Deed of Perpetual Conservation Easement, a public record.[1] The Extension Service publication is also appropriate for judicial notice because the North Dakota State University Extension Service is an accurate source of information and its analysis of the common usage of, and business expense associated with, the several sprinkler irrigation systems used in agriculture in the western United States cannot reasonably be questioned. *See, e.g., In re Doud,* 74 B.R. 865, 869 (Bankr. S.D. Iowa 1987), *aff'd sub nom. United States v. Doud,* Civ. No. 87-577-B, 1987 WL 46813 (S.D. Iowa Dec. 4, 1987), *aff'd,* 869 F.2d 1144 (8th Cir. 1989) (taking judicial notice of Iowa State Extension Service publication on estimated production costs for corn and soybeans).

Notwithstanding that concession, it is worth addressing why the Easement Report is not admissible to <u>complete</u> the Army's administrative record for the Endangered Species Act ("ESA") claims at issue in this case, particularly the Army's production of its November 2013 Programmatic Biological Assessment ("PBA") for ongoing and future military operations and activities at Fort Huachuca. ARMY000001.

---

[1] Courts cannot take judicial notice of the contents of documents for the truth of the matters asserted therein when the facts are disputed. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). Thus Defendants remain free to dispute the specific factual assertions Plaintiffs may make of the Easement Report. Were the Court to not take judicial notice of Plaintiffs' evidence, the Easement Report is certainly inadmissible hearsay as Plaintiffs have used it in their merits briefing. This admissibility issue is separate from the question of whether the document is admissible under APA record review principles.

Plaintiffs point to an email from Army records to support their assertion that the Army was provided with the Easement Report in late November 2013. ECF 19-2. That email shows that a lawyer with the Cochise County Attorney's Office (who was involved in closing the transaction for the Preserve Petrified Forest Conservation Easement) provided both the Easement Report and the Deed of Perpetual Conservation Easement for the Preserve Petrified Forest property to Dan Haws, Fort Huachuca's attorney, on November 20, 2013, the same day the deed was recorded in the Cochise County title records. ECF 19-2; ECF 26-3. In fact the Conservation Easement specifically incorporates the Easement Report by reference and describes its purpose in the recitals as documenting the condition of the property, specifically to ensure enforcement of the key conservation value of the property that "past irrigation practices be prohibited," including use of "three agricultural wells, which in the past have been used for irrigation," and that will be retired from irrigation use. ECF 26-3 at pp. 1-2, 5. Thus the Easement Report is "an accurate representation of the Property at the date of this Easement." ECF 26-3 at 1. Defendants do challenge Plaintiffs' exaggerated argument based on the absence of personal property (the sprinkler system) that would not need to be conveyed with real property where its future use was prohibited. The agencies' merits brief sets out detailed arguments defending the agencies' groundwater demand accounting analysis of the Conservation Easement for the Preserve Petrified Forest property. ECF 25 at pp. 19-26.

The problem with Plaintiffs' argument for completion of either agency's separate administrative records arises from the fact that by November 20, 2013, the Army and FWS had already agreed to use a net overall savings of 2,588 acre feet of retired groundwater pumping per year for this easement in their groundwater demand accounting. ECF 25 at 21; ECF 26 at pp. 77-81, SOF ¶81. On November 18, 2013, FWS sent a letter to the Army concurring with the Army's August 29, 2013, proposal for calculating the water savings attributable to this easement for use in the groundwater

demand accounting analysis in the PBA and consultation. ARMY000535-36; ARMY025652-53; FWS002774-75.  Thus, the Army had already concluded its analysis of this one narrow issue in the PBA after receiving FWS' concurrence.  The Army finalized the entire PBA at the same time, as the Army had been working under an internal deadline of November 21, 2013 to provide the PBA to FWS. ARMY025709; FWS002856 (noting that the Army transmitted the PBA to FWS with a request to initiate consultation on Monday, November 25, 2013).

This chronology shows that Plaintiffs have failed in their burden of showing that the Army considered the Easement Report in calculating the water savings while developing the PBA and preparing the groundwater demand accounting. At best, Plaintiffs have shown that easement report was in the Army's files, not that the document was considered in the course of preparing the groundwater demand accounting portion of the PBA. *Pres. Endangered Areas of Cobb's Hist., Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246-47 n. 2 (11th Cir. 1996) (noting that administrative record consists only of documents considered by staff prior to agency action).

The error in Plaintiffs' argument is that it improperly conflates agency possession of a record with agency consideration of the record.  Mere possession of the easement report by Army is insufficient. *Native Ecosystems Council v. Weldon*, 848 F. Supp. 2d 1207, 1227 (D. Mont. 2012) (rejecting argument that documents "in the Forest Service's possession at the time it issued its decision" were part of the record), vacated as moot, No. Civ. 11-99-M-DWM, 2012 WL 5986475 (D. Mont. Nov. 20, 2012); *Pinnacle Armor*, 923 F. Supp. 2d at 1239 ("possession" is "not enough" to show consideration of a document); *Sequoia Forestkeeper v. U.S. Forest Serv.*, No. 1:09-cv-00392-LJO-JLT, 2010 WL 2464857, at *4 (E.D. Cal. June 12, 2010) (demanding more than agency possession); *see also South Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, No. CIV S-06-2845 LKK JFM, 2008 WL 3932358, at *4 (E.D. Cal. Aug. 26, 2008)

("Federal defendants are not required to produce, in an administrative record, every scrap of relevant paper."). The mere fact that an Army administrative staff person involved in the ESA consultation received the Easement Report is not concrete evidence that the agency decisionmakers actually directly or indirectly considered the document.

As the government's merits brief explains, the history of agricultural irrigation on the parcel was sufficient evidence to support the water savings value the agencies ascribed to the conservation easement. The details in the Easement Report, if anything, further support their analysis, such as the presence and functionality of the three agricultural wells whose future use would be retired by the conservation easement. However, it needs to be said that Plaintiffs' precise argument to complete the Army administrative record with the Easement Report fails on its own terms. The easement report document was issued only after the agencies had finished their analysis of the conservation easement valuation. Moreover, Plaintiffs present no evidence at all that the FWS administrative record is incomplete, or that any FWS employee involved in the ESA consultation reviewed or possessed the easement report.

**B. Plaintiffs have not shown either agency considered the Arizona Republic article.**

Plaintiffs also argue that both agencies' administrative records must be completed with an Arizona Republic newspaper article purportedly published in September 2007. Pl. Br. at 10, citing ECF 19-3. Plaintiffs' argument for admission of this article lacks any colorable basis. They have offered no evidence, and certainly not the requisite "clear evidence," that the decision-makers at either agency, involved in the ESA consultation that concluded in March 2014, considered this newspaper article from 2007.[2] *McCrary*, 495 F. Supp. 2d at 1041-42; *see also Pinnacle Armor*, 923 F. Supp. 2d at 1239-40.

---

[2] This 2007 article was supposedly published, as it happens, at around the same time as the 2007 Biological Opinion ("BiOp") that preceded the 2014 BiOp now before the Court.

Certainly the assertion that the journalist who wrote the article spoke with public affairs representatives from each agency is no evidence that the agency decision-makers were even aware of the article at the time it was published, let alone six or seven years later when in consultation over a new BiOp.

The supposed "facts" that Plaintiffs would take from the article (about the suitability of the parcel for residential development) are inadmissible double hearsay by a local real estate agent in any event. Moreover, these hearsay statements about the parcel's future use for residential development, not larger-scale farming or ranching, must be taken as sales puffery given that such development never transpired, as evidenced by Cochise County's purchase of the Preserve Petrified Forest parcel in 2013 for $2.7 million (in coordination with the City of Sierra Vista and the Army), about half the parcel's supposed listing price of $5.2 million in 2007. ARMY000519; ECF 26-3 at 11 (noting that easement comprises 96 percent of fair market value of unencumbered property).

**C. Plaintiffs' three studies are inadmissible to complete either agency administrative record.**

Plaintiffs also offer three more documents to "complete" the agencies' administrative records, even though those documents all post-date the BiOp. Pl. Br. 11-12. Their argument for "completing" the agencies' administrative records reduces to the bootstrap theory that the extra-record documents are part of the administrative records because Plaintiffs mailed them to the agency heads, accompanying Plaintiffs' mandatory notice of their intent to file an ESA-citizen suit claim, as required by ESA Section 11(g), 16 U.S.C. § 1540(g)(2).

These three documents are inadmissible because they are post-decisional to the ESA consultation. They are thus inadmissible for any purpose in adjudicating the APA claims. Decades of caselaw establish that post-decisional, extra-record evidence is inadmissible. *Ctr. for Biological Diversity*, 450 F.3d at 944 (Post-decision information is inadmissible "as a new rationalization . . . for attacking an agency's decision") (citation

omitted); *Ctr. For Biological Diversity v. U.S. EPA*, 90 F. Supp. 3d 1177, 1198-99 (W.D. Wash. 2015) (post-decision information is inadmissible "to determine the correctness or wisdom of the agency's decision.") (citation omitted).

Plaintiffs cannot dodge this issue by reframing the arguments as ESA citizen-suit claims. Assuming for the sake of argument that Plaintiffs may offer extra-record evidence in support of an ESA citizen suit claim (though such evidence may still only be admitted under one of the four narrow exceptions to the APA record review rule), it is still the rule (just as for APA claims) that "post-decision information cannot be used to challenge the merits of the agency's decision." *Friends of the Clearwater v. Higgins*, Case No. 2:20-cv-00243-BLW, 2021 WL 827015, at *4-5 (D. Idaho Mar. 4, 2021) (rejecting post-decisional extra-record evidence). The decision in *Higgins* applied this bright-line rule in an ESA citizen suit case and rejected admission of a series of extra-record evidence for being post-decisional. *Id.* at *5-7. Plaintiffs' three documents are quintessential post-decision information and inadmissible to support Plaintiffs' ESA citizen-suit claims.

Plaintiffs also propose (Pl. Br. 11) that the three documents are not actually post-decisional because they are challenging the agencies' decision to not reinitiate ESA consultation upon receipt of Plaintiffs' notice of intent to sue. This assertion does not withstand scrutiny. The Army responded to Plaintiffs' notice letter with a letter addressing several of the more outrageous assertions in Plaintiffs' letter. ECF 26-2. The Army concluded the letter by explaining that it was already planning to reinitiate ESA consultation with FWS (as the current BiOp expires in March 2024) and would begin work on a new Biological Assessment in 2021. ECF 26-2 at 3. Plaintiffs' assertion (Pl. Br. 11) that the Fort "refused to reinitiate consultation" is just incorrect. More importantly, Plaintiffs cite no caselaw that supports their theory that they may manufacture a final agency action on ESA compliance—and import their post-decisional documents into an agency administrative record—simply by sending a demand letter.

It may be that Plaintiffs' claim seeking reinitiation of consultation is treated as a failure-to-act claim for seeking a new ESA consultation, though Plaintiffs have made no such argument. Framing the reinitiation claim in that light still requires that judicial review be based on a review of the agency administrative record. *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1017 (9th Cir. 2012) (en banc) (holding that a lawsuit challenging an agency's failure to consult under Section 7 of the ESA "is a record review case"); *San Luis & Delta-Mendota Water Auth. v. U.S. Dep't of Interior*, 984 F. Supp. 2d 1048, 1056 (E.D. Cal. 2013) ("The record review limitations of the APA apply to claims challenging agency inaction as well as to claims challenging agency action.") (citation omitted); *Biodiversity Legal Found. v. Norton*, 180 F. Supp. 2d 7, 10-11 (D.D.C. 2001) (discussing the Administrative Record rule under Section 706 of the APA, and stating that "[s]ignificantly, this requirement applies whether a court is reviewing agency action or inaction."). Here, the Army continued to create additional annual reports provided to FWS as required by the BiOp to document its activities, such as the implementation and effectiveness of its water conservation measures. ARMY025714-32; ARMY025733-49; ARMY025750-69; ARMY025770-89; ARMY025790-812; ARMY025813-32; ECF 25 at 43 (discussing Army's annual reports to FWS).

Given Plaintiffs' claim that new information requires a new ESA consultation, it was appropriate for the Army to include its annual reports in its administrative record. *See S.F. BayKeeper v. Whitman*, 297 F.3d 877, 886 (9th Cir. 2002) (noting that when a suit challenges agency inaction, district court can consider supplemental statements of an agency position because there is no date certain by which to define the administrative record.) In *Whitman*, for example, the court held that if there is no clear endpoint of decision-making in a failure to act case, the case may require an "open" record that the agency—and only the agency—may supplement as appropriate. *Id*. (allowing the agency to supplement the administrative record with a later-created document because there was "no final agency action that close[d] the administrative record"). Accordingly, even in an ESA case alleging agency inaction, the Court may not consider any extra-record evidence

unless it fits within one of the recognized, narrow exceptions to the record review rules. *Lands Council*, 395 F.3d at 1029-30. This caselaw precludes Plaintiffs' attempts to "complete" the agencies' administrative records by demand letter.

Plaintiffs maintain (Pl. Br. 12) that a refusal to include their exhibits in the agencies' administrative records would lead to absurd results. The contrary is actually true. Plaintiffs' notice of intent to sue letter to the agencies (and initial disclosure in this case) included 145 unindexed attachments of unknown authenticity, completeness, or even relevance. Virtually all of them are obviously irrelevant given Plaintiffs' abandonment of them here. Yet Plaintiffs now layer on the hyperbole about the gross unfairness that the agencies did not include this unsorted mass in their administrative records. The real problem here is that Plaintiffs' motion fails to properly apply the law stating their burden of proof in requesting to complete an agency administrative record. Plaintiffs also fail to support their argument with probative evidence that the agency decision-makers considered each document prior to the formal agency decision challenged in the case. Rather than follow that accepted caselaw and procedure, Plaintiffs gamble instead on creating a wholesale exception to the record review rule that would enable them to create a new agency decision simply by sending a letter with that demand and then "mail-in" their preferred administrative record immediately prior to litigation. Such an approach has no support in the law.

## II. Plaintiffs may not supplement either agency's administrative record with the five extra-record documents.

Plaintiffs also argue that their five documents should be admitted as extra-record evidence under the "relevant factors" exception to the general rule under the APA limiting judicial review to the agencies' administrative records. Pl. Br. 12-15. Under this narrow exception, the Court may consider extra-record evidence "[when] necessary to determine whether the agency has considered all relevant factors and has explained its decision." *Ctr. for Biological Diversity*, 450 F.3d at 943. Plaintiffs ignore that, as explained above at pp. 3-4, this exception is to be narrowly construed to prevent the

exception from swallowing the record review rule.  They also ignore their heavy burden to demonstrate that the evidence is absolutely necessary to not frustrate judicial review, as contrasted with the mere proposition that the agency should have considered other information.

As stated above, Defendants do not oppose the admission of the Easement Report based on judicial notice, and on the condition it is admitted as part of the recorded Deed of Perpetual Conservation Easement for the Preserve Petrified Forest property to which it was incorporated by reference, as well as admission of a separate North Dakota State University Extension Service publication on the uses and expenses of sprinkler irrigation systems in agriculture.  Were the Court to decline to take judicial notice of the Easement Report, it is inadmissible hearsay as Plaintiffs have used it in their merits briefing (and the same hearsay problem holds true for their other extra-record evidence).  Though this evidentiary issue is distinct from the question of whether the document is admissible extra-record evidence under APA record review principles, the questions are nonetheless intertwined.  That is to say, Plaintiffs must explain the distinct purposes for which they are proffering extra-record evidence in order to address the relevant factors exception.

The Easement Report is inadmissible extra-record evidence because Plaintiffs must first proffer the Easement Report for the truth of its statement, for example, that the property ceased center pivot irrigation for alfalfa crops in 2006, or to dispute whether irrigation infrastructure remained intact at the time of the transaction.  The Easement Report is textbook hearsay on those points, with no obvious foundation.  Unless Plaintiffs establish those facts with admissible evidence they cannot also rely on the Easement Report to support their argument that the current use of groundwater on the Preserve Petrified Forest property at the time of sale is the primary factor in determining whether the agencies' reasonably found the conservation easement to have a beneficial effect on future Upper San Pedro River baseflows.

Those issues aside, the larger problem with Plaintiffs' relevant factor argument for the five documents is that Plaintiffs turn the extra-record analysis on its head with

their proposition that a document is admissible under the relevant factors exception where the necessity for the document is determined solely by reference to Plaintiffs' claimed need for the evidence in its merits argument. The law actually imposes a different and steeper burden on Plaintiffs. Before extra-record material may be considered under this exception, Plaintiffs must first prove that the existing administrative record is inadequate. *Hodel*, 840 F.2d at 1437 (review of extra-record evidence inappropriate where plaintiff "makes no showing that the district court needed to go outside the administrative record to determine whether the [agency] ignored information"). Plaintiffs' motion lacks any argument that the agencies' supporting administrative records are so bare on the basis for the conservation easement analysis in the groundwater demand accounting (or the other issues, such as agency consideration of climate change, or consideration of available groundwater modelling) to "effectively frustrate[] judicial review." *Id*. at 1436; *Univ. of Wash. v. Sebelius*, No. C11-625-RSM, 2011 WL 6447806, at *2 (W.D. Wash. Dec. 22, 2011) (same); *Rybacheck v. U.S. EPA*, 904 F.2d 1276, 1296 n. 25 (9th Cir. 1990) (denying motion to supplement where "original record [ ] adequately explains the basis of [the agency's decision] and demonstrates that the [agency] considered the relevant factors"); *In re Delta Smelt Consol. Cases*, No. 1:09-CV-1053 OWW DLB, 2010 WL 2520946, at *2 (E.D. Cal. June 21, 2010) (same); *Bark v. Northrop*, 2 F. Supp. 3d 1147, 1153 (D. Or. 2014) (rejecting venture outside of the record where "plaintiffs do not demonstrate how the 30,000-page record and 1,500-page supplementary record are so insufficient as to frustrate effective judicial review of plaintiffs' claims.").

In order to meet its burden, "a plaintiff must establish more than just that the [extra-record] document is relevant. In fact, the document in question must do more than raise 'nuanced points' about a particular issue; it must point out an 'entirely new' general subject matter that the defendant agency failed to consider." *Pinnacle Armor*, 923 F. Supp. 2d at 1234 (quoting *In re: Delta Smelt*, 2010 WL 2520946, at *5). "[T]he 'relevant factors' exception only applies when [f]ederal [d]efendants fail to consider a general subject matter that is demonstrably relevant to the outcome of the agency's decision, not

when specific hypotheses and/or conclusions are omitted from consideration." *In re: Delta Smelt*, 2010 WL 2520946, at *5. That is, only where there are "gaps or holes" in the agency's record that work to frustrate judicial review under the APA is supplementation appropriate. *Fence Creek Cattle*, 602 F.3d at 1131; *Winnemem Wintu Tribe v. U.S. Forest Serv.*, No. 2:09-CV-01072-KJM-KJN, 2014 WL 3689699, at *10 (E.D. Cal. July 24, 2014) ("Necessity exists only where the record is so scant that the court cannot carry out this function" of judicial review under the APA) (citation omitted).

When viewed against this distinct burden, it is apparent that Plaintiffs' argument for admission of the five documents under the relevant factors exception fails. They have not shown how the agencies' administrative records ignore any of the subject on which the extra-record evidence is offered. The agencies' opening merits brief on summary judgment readily explains how their administrative records support their analysis of the Preserve Petrified Forest conservation easement in the groundwater demand accounting. ECF 25 at 20-26. The question posed in this current motion to supplement the agencies' administrative records is whether the agency records are so bare on this issue as to frustrate judicial review. Without repeating the agencies' merits arguments, the administrative records are not bare. Rather they contain a reasonable discussion of the issue, including emails and letters between the Army and FWS presenting the rationale for how they calculated the beneficial effects of this easement. FWS001609 (Army letter and email); FWS001696-704 (email string); FWS027744 (FWS Easement letter). Plaintiffs' own Statement of Facts itself refutes any argument that the agencies' administrative records are bare on the question of the uses of the Preserve Petrified Forest parcel, with its citation to administrative record documentation about the cessation of irrigation on the parcel and forecasts about trends in land use and residential development in the area. ECF 19 at ¶¶ 78-79 (citing ARMY000573 (PBA); FWS028326, FWS028349 (Lacher 2011); ARMY023334 (Ariz. Dep't of Com., Fort Huachuca Joint Land Use Study)).

15

Likewise, Plaintiffs offer the Arizona Republic article as evidence that the Preserve Petrified Forest parcel was allegedly bound for residential development, notwithstanding that this development never occurred in the many years the property was being marketed for sale. Again, the agencies' existing administrative records already addresses the conservation easement analysis. *See, e.g.*, ARMY023334 (Ariz. Dep't of Com., Fort Huachuca Joint Land Use Study). As well, the FWS' record documents its concern that, unless preserved, the property might be used for orchards or livestock pastures. FWS006179, FWS006184.

Plaintiffs have likewise ignored their burden to describe the necessity for admission of their other three exhibits (ECF 19-4, 19-5, 19-6) based on gaps in the agencies' existing administrative records on specific issues. They claim (Pl. Br. 15) all three documents demonstrate the adverse impacts of the Fort's groundwater pumping. But the Plaintiffs' selective attempt to use post-decisional information in the Cochise Conservation and Recharge Network ("CCRN") presentation to argue that there was less recharge than forecasted (i.e., a slightly reduced credit to the Fort's water budget) ignores the Army's annual reports to FWS documenting implementation of all its conservation and mitigation measures. These reports show a significant reduction in groundwater demand attributable to the Fort (i.e., a significantly reduced debit to the Fort's water budget). ARMY025714-32; ARMY025733-49; ARMY025750-69; ARMY025770-89; ARMY025790-812; ARMY025813-32. In other words, Plaintiffs attempt to use the CCRN presentation to argue that new information shows the Fort's mitigation measures are not as effective as forecasted. The Army's annual reports to FWS show that the Fort's mitigation has resulted in a greater surplus of water savings than forecasted. *See* ECF 26 (Defendants' Statement of Facts) at ¶ 125.

Plaintiffs likewise do not explain how their "Climate Science Report" addresses an issue unaddressed by the current administrative records. As the agencies' opening merits brief on summary judgment explained, both agencies addressed the risks of climate change to the surface flows in the Upper San Pedro River and on the ESA-listed species

16

at issue. The agencies' existing records expressly discuss how such changes would worsen over time and review the range of projections of impacts depending on which climate change modelling scenario (or blend of scenarios) is used. ECF 25 at 29-35; *see also* FWS004668-72 and ARMY000545-53. There are no gaps or holes in the agencies' administrative records such that supplementation is necessary to undertake judicial review.

Finally, Plaintiffs offer their consultant's report presenting their own groundwater modelling analysis.[3] They ignore that their own consultant's groundwater model is inadmissible to prove alleged deficiencies in the agencies' own groundwater modelling. Nor does their reinitiation claim change the framework for narrowly applying the relevant factors exception or lessen their burden to demonstrate the necessity of extra-record evidence and identify issues left unaddressed by the administrative record. *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 602-04 (9th Cir. 2014) (rejecting "battle of the experts," especially based on post-decision evidence); *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 993 (9th Cir. 2014) (rejecting several extra-record declarations to question agency's scientific judgments). The *Jewell* and *Locke* decisions both addressed claims alleging similar deficiencies and oversights in other BiOps issued under the ESA. Both decisions resoundingly disapprove of a permissive approach to admitting extra-record evidence to evaluate the sufficiency of FWS' analysis of the pertinent scientific information.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion to Complete or Supplement the Administrative Record for failing to carry their heavy burden to either complete or supplement either agencies' administrative record.

---

[3] This report is inadmissible under the Federal Rules of Evidence for all the objections stated in the agencies' opening summary judgement brief. ECF 25 at 44, n.18.

Dated this 26th day of April, 2021.

Respectfully submitted,

JEAN E. WILLIAMS
Acting Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

*/s/ John H. Martin*
JOHN H. MARTIN (Colo. Bar 32667)
Wildlife & Marine Resources Section
999 18th St., South Terrace Suite 370
Denver, CO 80202
john.h.martin@usdoj.gov
Tel: (303) 844-1383
Fax: (303) 844-1350

Of Counsel:

JUSTIN TADE
Office of the Solicitor
United States Department of the Interior

MARK HOLYCROSS
United States Army Legal Services Agency, Environmental Law Division
United States Department of the Army

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that I have caused the foregoing to be served upon counsel of record through the Court's electronic service system which caused all parties or counsel to be served by electronic means as reflected on the Notice of Electronic Filing.


Dated: April 26, 2021                                    */s/ John H. Martin*